IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CARLOS R. DOMINGO-JIMENEZ,

    Petitioner,

v.

LORETTA E. LYNCH, Attorney General of the United States, JEH C. JOHNSON, Secretary of the United States Department of Homeland Security, THOMAS DECKER, Field Office Director, and STEVEN L. DURFOR, Sheriff-Coroner of Yuba County in charge of Yuba County Jail,

    Respondents.

No. C 16-05431 WHA

**ORDER GRANTING MOTION TO DISMISS HABEAS PETITION**

## INTRODUCTION

In this petition for habeas relief, respondents seek dismissal following the release of petitioner from custody. For the reasons stated below, respondents' motion to dismiss is **GRANTED**.

## STATEMENT

Petitioner Carlos Domingo-Jimenez is a national and citizen of Guatemala. On August 1, 2016, he was arrested on four misdemeanor charges in Alameda County based on allegations that he had inappropriately touched two girls (ages 11 and 12) at a public pool. On August 18, the Superior Court held a bail hearing and ordered him released on his own recognizance. Petitioner had no prior criminal convictions.

1   While he was in the release area of the Alameda County Sheriff's Office, a deportation officer with Immigration and Customs Enforcement took him into custody, then placed him in removal proceedings, charging him as a removable alien for being present in the United States without being admitted or paroled pursuant to Section 1182(a)(6) of Title 8 of the United States Code. He remained in federal custody while his state criminal case was pending in Oakland.

On September 14, Immigration Judge Joren Lyons held a bond hearing on petitioner's removal action. In advance of the hearing, petitioner submitted numerous letters from his family and friends contending that he would not present a danger to the community upon release (Verified Petition, Exhs. I, J, K, N, O, P, Q, R, and S). At the hearing, however, Judge Lyons admitted into evidence a police report offered by Homeland Security over petitioner's strenuous objections. Judge Lyons overruled those objections in reliance on Ninth Circuit decisions holding that consideration of police reports was appropriate in discretionary proceedings such as bond hearings, provided any evidence calling into question the reliability of those police reports received consideration. The police report provided detailed synopses of officer interviews with the two alleged victims, including the allegation that petitioner touched one girl's groin area on three separate occasions in the pool on August 1 (Blachman-Hitchings Decl., Exh. H). Petitioner declined to testify about the events of the day in question.[*]

Judge Lyons denied petitioner's request for release on bond in light of the specificity of the allegations in the police report, finding him a danger to the community (*id.*, Exh. I).

On September 22, petitioner filed the instant petition and promptly moved for an order to parole him to attend hearings in the state criminal proceedings. Without success, his counsel had previously attempted to have him released and transported by ICE to three earlier hearings in state court. After the petition, however, the government reversed field and allowed him to attend hearings in the state criminal matter. The parties therein reached a negotiated disposition of the criminal proceedings, and a sentence was imposed (Petition, Exh. U). Petitioner remained detained by ICE.

---

[*] Contrary to government counsel, petitioner's counsel did *not* ask Judge Lyons *not* to review the security footage at the pool during the September 14 hearing (Dkt. No. 13 at 9). They only requested the judge to not review the police report (Dkt. No. 26).

2

On October 17, petitioner and the government first appeared in this action to hear petitioner's motion for a temporary restraining order. A decision was held in abeyance pending the outcome of the bond redetermination. On October 24, a different immigration judge, Judge Valerie Burch, found petitioner was not a danger to the community or a poor bail risk, and bond was set at $5000. He was released on bond from ICE custody November 1 and remains out of custody today. The release is for all purposes, not just for attendance in state court (where the proceedings are concluded anyway). On November 8, petitioner's then-pending motion in this action was denied as moot and a schedule settled to hear the instant motion.

The government now moves to dismiss pursuant to FRCP 12(b)(1) because petitioner remains free on bond and further relief is unnecessary.

Following the hearing on this motion, petitioner's counsel submitted a motion for consideration of a declaration regarding an immigration court hearing on January 13, 2017. There, petitioner's counsel represented another client in an unrelated action who became rearrested and redetained by ICE despite an immigration judge's order granting him bond. The immigration judge in that matter accepted the government's argument that ICE had authority to cancel a bond ordered by an immigration judge without first seeking a new order from the immigration court (Dkt. No. 28).

**ANALYSIS**

Petitioner seeks habeas relief pursuant to Section 2241 of Title 28 of the United States Code, which applies where a petitioner is in custody in violation of the Constitution or laws or treaties of the United States.

The petition asserts three claims for relief. *First*, petitioner contends the federal detention denied him an opportunity to appear and defend himself in the state criminal prosecution and thus violated petitioner's due process and Sixth Amendment rights. *Second*, petitioner contends the immigration judge's admission of the police report into evidence that had not resulted in a criminal conviction violated petitioner's due process. *Third*, petitioner contends the immigration judge's finding that petitioner was a danger to the community based

3

exclusively on the police report, despite the state criminal court's finding to the contrary in its bond determination, violated petitioner's due process.

The government contends petitioner's release on bond granted him all the relief to which he was possibly entitled.

A habeas petition continues to present a live controversy after a petitioner's release if there is some remaining collateral consequence that may be redressed by success on the petition. *Abdala v. I.N.S.*, 488 F.3d 1061, 1063 (9th Cir. 2007). Unlike standing, however, avoiding a finding of mootness does not necessarily require a live controversy. A case may survive without a live controversy if it satisfies either the voluntary cessation exception or the capable of repetition, yet evading review exception. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000).

1. **LIVE CONTROVERSY.**

In *Abdala*, the petitioner alleged that his prolonged pre-removal detention violated the Immigration and Nationality Act and his due process rights, but he was deported to Somalia before the petition was heard. Because deportation fully relieved his prolonged detainment, there were no collateral consequences remaining that could be redressed by the petition.

Similarly, the claims here were fully resolved after petitioner was transported to his criminal hearings and eventually released on bond without further charges. Petitioner has no need for defense counsel in the state matter (now resolved), and any violation based on the use of the police report in the first bond redetermination hearing is now moot following the second immigration judge's release order.

Despite release, petitioner argues a live controversy exists because he remains subject to two continuing effects of the government's alleged violations.

*First*, petitioner claims the allegedly unconstitutional reliance upon the police report in his first bond hearing will be relied upon by the government to admit the police report into evidence in his asylum proceedings. In asylum proceedings, he must show that he has not been convicted of a particularly serious crime, and the deciding court may go beyond a conviction to determine whether the offense constituted a particularly serious crime. 8 USC 1158(b)(2)(A)(ii);

4

*Matter of N-A-M*, 24 I&N Dec. 336 (BIA 2007). Petitioner fears the government will use the first immigration judge's police report determination to show that the less serious misdemeanors petitioner plead guilty to in the resolved state matter were more serious.

This alleged continuing effect is not a collateral consequence redressable by success on the petition. Our court of appeals in *Abdala* adopted its definition of collateral consequences from *Spencer v. Kemna*, 523 U.S. 1, 14 (1998). In *Spencer*, the Supreme Court held that an allegedly unconstitutional parole revocation did not present a "concrete and continuing injury" after the petitioner there was re-released on parole and his sentence had expired. That petitioner argued that the parole revocation decision, which had been based on a police report of a crime he allegedly committed while on parole, might be wrongly used against him in future parole proceedings while serving another sentence. Even though the petitioner actually was serving a new sentence when the Supreme Court considered his case, the detrimental effect of the past parole revocation was still only a "possibility rather than a certainty or even a probability," and therefore was not a collateral consequence. *Id.* at 14.

So too here. Our petitioner's theory that the police report determination will resurface in his asylum proceedings to his detriment is speculative and does not constitute a collateral consequence. It makes no difference that our petitioner remains subject to the conditions of his release on bond, unlike the *Spencer* petitioner — the theory remains just as speculative.

The second alleged continuing effect imagines that an immigration judge in a possible future bond hearing will rely on the police report decision of the first immigration judge. This also fails because future bond redeterminations are even more speculative than asylum proceedings. A bond hearing will only occur if petitioner is redetained by ICE. If ordered removed, he might be rearrested. That scenario is plausible, but it is not certain or even probable that the police report would be relied on by the government in any such bond proceeding, much less relied on by the immigration judge.

2. **VOLUNTARY CESSATION EXCEPTION.**

The voluntary cessation exception enables a federal court with no remaining controversy before it to retain jurisdiction on the ground that the party asserting mootness voluntarily ceased

5

illegal conduct in response to a lawsuit, or threat of one, and may revert to its old ways once the action is dismissed. *Friends of the Earth*, 528 U.S. at 189.

Petitioner claims ICE voluntarily began transporting petitioner to his state court hearings in response to the filing of the instant habeas petition, after missing three. ICE was not ordered to do so by either the immigration judge or the Superior Court because both felt they lacked jurisdiction to effectuate such an order (Dkt. No. 4 at 117; Dkt. No. 7 at 5). It is evident the proceedings on this petition caused a voluntary change in ICE's challenged conduct.

Because the conduct was ceased voluntarily, the government holds "the formidable burden of showing it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 190. This burden may not be shifted to petitioner — the government must show that it is "absolutely clear" that it is not reasonably likely they will subject petitioner to the same challenged behavior. *See Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169, 1174 (9th Cir. 2009).

In *Picrin-Peron v. Rison*, our court of appeals considered the voluntary cessation exception where a habeas petitioner challenged his indefinite detention. The petitioner claimed similar challenges to his were repeatedly dismissed as moot because the government would voluntarily release the petitioners before their petitions were heard. The decision found the government had met its burden that the alleged conduct would not recur based on a verified declaration from the government stating the petitioner would remain on parole absent circumstances completely out of the government's control. 930 F.2d 773, 776 (9th Cir. 1991).

Here, that burden has been met too. Our petitioner is free on bond. The state prosecution is over. Even if ICE wanted to bring him back into custody and even if this were done in spite of the immigration judge's release order, a new arrest would have nothing to do with the now-resolved state prosecution and would turn on new facts absolutely beyond the control of ICE. Even under that scenario, were ICE to resurrect the swimming pool incident again, the police report involving the alleged touching of the children has been replaced by a more specific conviction (on less serious charges). So it is very hard to see how the circumstances that led to this petition could be revived.

6

Petitioner's arguments that the immigration judge's conduct constituted a voluntary cessation also fail. The second bond hearing leading to petitioner's release came after the state prosecution was fully resolved, a change in circumstances. Because the immigration judge's conduct was merely a response to changed circumstances, not a gimmick to dodge federal court oversight, the government does not have the burden to show the alleged behavior will not recur.

### 3. CAPABLE OF REPETITION EXCEPTION.

With respect to the exception for matters capable of repetition yet evading review, our court of appeals views this exception narrowly, limiting its applicability "to extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff will be subjected to the same action again." *C.F. ex rel. Farnan v. Capistrano Unified School Dist.*, 654 F. 3d 975, 983 (9th Cir. 2011). Unlike the voluntary cessation exception, the capable of repetition prong of this exception places the burden on petitioner to establish a demonstrated probability that the same controversy will recur involving the same litigants. *Lee v. Schmidt-Wenzel*, 766 F. 2d 1387, 1390 (9th Cir. 1985). To meet the evading review prong, it must be shown that the underlying action is "almost certain to run its course before" a federal court of appeals "can give the action full consideration." *See Hubbart v. Knapp*, 379 F. 3d 773, 778 (9th Cir. 2004).

Petitioner relies on *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953), to argue the burden is on the government. That decision, however, only considered the voluntary cessation exception, rather than the capable of repetition exception.

Petitioner has failed to meet his burden. Under the broadest interpretation of what constitutes "the same controversy" involving the "same litigants," petitioner argues that an immigration judge will well rely on the police report in question in ruling on the merits in removal or asylum proceedings. Any such reliance, however, would be reviewable on direct appeal by our court of appeals and thus would not escape review.

While the foregoing is sufficient, it finally deserves to be said that it would be imprudent for a district court to embark on the hypothetical exercise of deciding the extent to which the police report should be admissible in the asylum (or any other) proceeding. At the bond hearing,

7

petitioner's counsel herself presented numerous hearsay letters vouching for petitioner. Hearsay is not per se inadmissible at bond hearings and the real question usually comes down to how reliable the specific hearsay seems to be. Are we really going to bring the two young girls into federal court to re-live the pool touching and to be cross-examined about it, merely in aid of deciding how reliably the police officer captured their memories, all in preparation for the off-chance that this incident will someday come back to haunt petitioner? That scenario would be premature. Caution is one thing but excess caution is another. If and when petitioner ever faces the police report again (without review by our court of appeals) there will be time enough then to bring a new petition.

## CONCLUSION

For the reasons stated above, this case is **DISMISSED** without prejudice to a new petition in the event that petitioner is rearrested and detained based on a police report. Judgment will follow. The clerk **SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: January 19, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE